UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

Timothy P. Neumann, Esq. [TN6429]
Geoffrey P. Neumann, Esq. [059702019]
Broege, Neumann, Fischer & Shaver, LLC
25 Abe Voorhees Drive
Manasquan, New Jersey 08736
(732) 223-8484
timothy.neumann25@gmail.com
geoff.neumann@gmail.com

*Attorneys for Debtor and Debtor-in-Possession*
*Michael Sean Ragiel*

| | |
|---|---|
| In Re: | Case No.:  23-12965/CMG |
| **MICHAEL SEAN RAGIEL,** | Chapter 11 |
| Debtor. | Judge: Hon. Christine M. Gravelle |

**DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE DESCRIBING CHAPTER 11 PLAN PROPOSED BY MICHAEL SEAN RAGIEL**

**PLEASE READ THIS DISCLOSURE STATEMENT CAREFULLY. THIS FIRST MODIFIED DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THIS PLAN OF REORGANIZATION. THE PLAN PROPONENT BELIEVES THAT THIS PLAN OF REORGANIZATION IS IN THE BEST INTEREST OF THE CREDITORS AND THAT THE PLAN IS FAIR AND EQUITABLE. THE PROPONENT URGES THAT THE VOTER ACCEPT THE PLAN.**

_____/s/_ _Michael Sean Ragiel_____
Michael Sean Ragiel

DATED: September 26, 2023

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................................4
A. Purpose of this Document .............................................................................................4
B. Confirmation Procedures ..............................................................................................5
1. Persons Potentially Eligible to Vote on the Plan .........................................................5
2. Time and Place of the Confirmation Hearing ..............................................................6
3. Deadline for Voting For or Against the Plan ................................................................6
4. Deadline for Objecting to the Confirmation of the Plan ..............................................7
5. Identity of Person to Contact for More Information Regarding the Plan .....................7
C. Disclaimer .....................................................................................................................7
II. **BACKGROUND** ...........................................................................................................7
A. Description and History of the Debtor's Business ........................................................7
B. Principals/Affiliates of Debtor's Business ...................................................................8
C. Management of the Debtor Before and After the Bankruptcy ......................................8
D. Events Leading to Chapter 11 Filing ...........................................................................8
E. Significant Events During the Bankruptcy ...................................................................8
1. Bankruptcy Proceedings ..............................................................................................8
2. Other Legal Proceedings ..............................................................................................9
3. Actual and Projected Recovery of Preferential or Fraudulent Transfers ....................9
4. Current and Historical Financial Conditions ...............................................................9
III. **SUMMARY OF THE PLAN** ....................................................................................10
A. What Creditors and Interest Holders Will Receive Under the Proposed Plan ...........10
B. Unclassified Claims ....................................................................................................10
1. Administrative Expenses and Fees ..............................................................................10
2. Priority Tax Claims .....................................................................................................12
C. Classified Claims and Interests ...................................................................................13
1. Classes of Secured Claims ..........................................................................................13
2. Classes of Priority Non-Tax Claims ...........................................................................14
3. Class of General Unsecured Claims ............................................................................14
4. Classes of Equity Interest Holders ..............................................................................14
D. Means of Effectuating the Plan ...................................................................................15
1. Funding for the Plan ....................................................................................................15
2. Post-Confirmation Management ..................................................................................15
3. Disbursing Agent .........................................................................................................15
E. Other Provisions of the Plan .......................................................................................15
1. Executory Contracts and Unexpired Leases ...............................................................15
2. Changes in Rates Subject to Regulatory Commission Approval .................................16
3. Retention of Jurisdiction .............................................................................................16
4. Procedures for Resolving Contested Claims ...............................................................17
5. Effective Date ..............................................................................................................17
6. Modification ................................................................................................................17
F. Tax Consequences of Plan ...........................................................................................17
G. Risk Factors ................................................................................................................19
IV. **CONFIRMATION REQUIREMENTS AND PROCEDURES** ................................20

A. Who May Vote or Object .................................................................................20
1. Who May Object to Confirmation of the Plan ..................................................20
2. Who May Vote to Accept/Reject the Plan .......................................................20
a. What Is an Allowed Claim/Interest ..................................................................20
b. What Is an Impaired Claim/Interest .................................................................21
3. Who Is Not Entitled to Vote ...........................................................................21
4. Who Can Vote in More Than One Class .........................................................22
5. Votes Necessary to Confirm the Plan .............................................................22
6. Votes Necessary for a Class to Accept the Plan ..............................................22
7. Treatment of Nonaccepting Classes ...............................................................22
8. Request for Confirmation Despite Nonacceptance by Impaired Class(es) ...........23
B. Reorganization Analysis ..................................................................................23
C. Feasibility .....................................................................................................24
**V. EFFECT OF CONFIRMATION OF PLAN** .....................................................25
A. Discharge ......................................................................................................25
B. Revesting of Property in the Debtor .................................................................26
C. Modification of Plan .......................................................................................26
D. Post-Confirmation Conversion/Dismissal .........................................................26

## I - INTRODUCTION

Michael Sean Ragiel, (hereinafter referred to as the "Debtor") is the debtor in a Chapter 11 bankruptcy case. On April 10. 2023 (the **"Petition Date"**).  the Debtor commenced a bankruptcy case by filing a voluntary Chapter 11 petition under the United States Bankruptcy Code ("Code"), 11 U.S.C. §101, *et seq*. in the United states Bankruptcy Court for the District of New Jersey (hereinafter referred to as the "Bankruptcy Court"). Chapter 11 of the Code allows the Debtor, and under some circumstances, creditors and other parties in interest, to propose a plan of reorganization ("**Plan**"). The Plan may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both. The Debtor is the party proposing the Plan sent to you in the same envelope as this document. THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE PLAN WHICH IS ANNEXED HERETO AS EXHIBIT A. The Plan contains a list of definitions which are hereby incorporated by reference. It would be helpful to familiarize yourself with those definitions before reading this Disclosure Statement. This is a plan of reorganization that provides for sale of the Debtor' assets. The Effective Date of the proposed Plan is 30 days after entry of an Order of the Bankruptcy Court confirming the Plan.

**A. Purpose of This Document.** This Disclosure Statement summarizes what is in the Plan and tells you certain information relating to the Plan and the process the Bankruptcy Court follows in determining whether or not to confirm the Plan. **READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT: (1) WHO CAN VOTE OR OBJECT; (2) THE PROPOSED TREATMENT OF YOUR CLAIM (i.e., what your claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOU WOULD RECEIVE IN REORGANIZATION;  (3) THE HISTORY OF THE DEBTOR**

**AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY; (4) WHAT THE BANKRUPTCY COURT WILL CONSIDER WHEN DECIDING WHETHER TO CONFIRM THE PLAN; (5) THE EFFECT OF CONFIRMATION; AND (6) THE FEASIBILITY OF THE PLAN.**

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own lawyer to obtain more specific advice on how this Plan will affect you and what is the best course of action for you. Be sure to read the Plan as well as the Disclosure Statement. If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern. Code Section 1125 requires a Disclosure Statement to contain "adequate information" concerning the Plan. The term "adequate information" is defined in Code Section 1125(a) as "information of a kind, and in sufficient detail," about a Debtor and its operations "that would enable a hypothetical reasonable investor typical of holders of claims or interests" of the debtor to make an informed judgment about accepting or rejecting the Plan. The Bankruptcy Court ("Court") has determined that the information contained in this Disclosure Statement is adequate, and it has approved this document in accordance with Code Section 1124. This Disclosure Statement is provided to each creditor whose claim has been scheduled by the Debtor or who has filed a proof of claim against the Debtor and to each interest holder of record as of the date of approval of this Disclosure Statement. Under the Bankruptcy Code, your acceptance of the Plan may not be solicited unless you receive a copy of this Disclosure Statement prior to or concurrently with such solicitation.

**B. Confirmation Procedures**

**1. Persons Potentially Eligible to Vote on the Plan.** In determining acceptance of the Plan, votes will only be counted if submitted by a creditor whose claim is duly scheduled by the Debtor as

undisputed, non-contingent and unliquidated, or who, prior to the deadline for filing claims ("Bar Date" see § IV, A, 2, a. below), has filed with the Bankruptcy Court a proof of claim which has not been disallowed or suspended prior to computation of the votes on the Plan. All shareholders, partners or members, if any, of record as of the date of approval of this Disclosure Statement may vote on the Plan. The Ballot Form that you received does not constitute a proof of claim. If you are uncertain whether your claim has been correctly scheduled, you should check the Debtor's Schedules, which are on file at the office of the Clerk of the Bankruptcy Court located at: United States Bankruptcy Court, Clarkson S. Fisher US Courthouse, United States Bankruptcy Court, 402 East State Street, Trenton, New Jersey 08608. The Clerk of the Bankruptcy Court will not provide this information by telephone. THE BANKRUPTCY COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE. HOWEVER, IF THE BANKRUPTCY COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.

**2. Time and Place of the Confirmation Hearing.** The hearing at which the Bankruptcy Court will determine whether to confirm the Plan will take place on

_____, at _____ {A.M./P.M.}, before the Honorable Christine M. Gravelle, U.S.B.J., Clarkson S. Fisher U.S. Courthouse, 402 East State Street, 3rd Floor, Trenton, New Jersey 08608, Courtroom 3.

**3. Deadline for Voting for or Against the Plan.** If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and return the ballot in the enclosed envelope to the

Office of the Clerk, United States Bankruptcy Court, 402 East State Street, Trenton, New Jersey

08608. Your ballot must be received by                     2023 **or** it will not be counted.

**4. Deadline for Objecting to the Confirmation of the Plan.** Objections to the confirmation of

the Plan must be filed with the Bankruptcy Court and served by upon the following:

> GEOFFREY P. NEUMANN, ESQ.
> Broege, Neumann, Fischer & Shaver, LLC
> 25 Abe Voorhees Drive
> Manasquan, New Jersey 08736
> (732) 223-8484 (ext. 212)
> geoff.neumann@gmail.com

**4. Identity of Person to Contact for More Information Regarding the Plan.** Any interested

party desiring further information about the Plan should contact Geoffrey P. Neumann, Esq., at

the above address, phone number or email address.

**C. Disclaimer.** The financial data relied upon in formulating the Plan is based on the books and

records of the Debtor. The information contained in this Disclosure Statement is provided by the

Debtor. The Plan Proponent represents that everything stated in the Disclosure Statement is true

to the Proponent's best knowledge. **PLEASE NOTE THAT THE APPROVAL OF THIS**

**DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT DOES NOT**

**CONSTITUTE A RULING ON THE MERITS, FEASIBILITY OR DESIRABILITY OF**

**THE PLAN.**

**II – BACKGROUND**

**A. Description and History of the Debtor's Business**

1. The Debtor is an individual. He owns a single-family residence with an address of 198

   Deer Haven Road, Bedminster, NJ 07921 (the "Property").

2. The Debtor has a 60% interest in an entity called R&R Group Holdings, LLC ("R&R")

   that specializes in real estate speculation. The Debtor also holds a 47.74% interest in Carpet

7

Cycle LLC ("Carpet Cycle"). R&R does very little business from which the Debtor collects no income. Carpet Cycle was founded in 1999. After 10 years of growth Carpet Cycle expanded into processing old carpets to harvest plastic feedstock. To this end, the Debtor personally guaranteed $1.4M in January 2012 from Susquehanna Bank to build a new process factory in Newark NJ. After 4 years of paying the monthly debt service, the market for recovered plastics changed radically, adversely affecting Carpet Cycle's business and ability to remain current on the debt. In addition, the 2020 Covid-19 pandemic exacerbated the already dire situation resulting in further insolvency. Rather than refinance any loans, Branch Banking & Trust Company ("BB&T") (successor to Susquehanna Bank) elected to force liquidate the equipment collateral in the Carpet Cycle factory around December of 2016. While the equipment appraised for $450K, the realized revenue recovered by BB&T under forced auction scenario was $42K. BB&T then collected their SBA guarantee on these loans.

3. The Debtor attempted submission of "OIC" Offer in Compromise to the SBA to settle remaining debt (3 different loan pieces). A satisfactory response was never received. Because the Debtor personally guaranteed the SBA loans it has liens on the Debtor's family residence (purchased in 2002) since. While Carpet Cycle still is does business, it does not produce the cash flow or equity to service the remaining debt as a going concern. Hence the instant Chapter 11 reorganization to produce a satisfactory outcome and remove the SBA lien on the Debtor's home.

**B. Principals/Affiliates of the Debtor.** None.

**C. Management of the Debtor Before and After the Bankruptcy.** The Debtor's management before, during and after the bankruptcy proceeding was, is and will be conducted by the Debtor.

**D. Events Leading to Chapter 11 Filing.** See above Section IIA. The Debtor filed Chapter 11 due to frustration from various attempts to negotiate a global settlement of the three separate obligations to Branch Banking & Trust Company ("BB&T") that are each backed by the Small Business Administration (the "SBA Loans"). The SBA Loans could not be consolidated into a single resolution so the Debtor is attempting to pay the secured portion of the SBA Loans through his bankruptcy plan in order to remove the lien on his residence.

**E. Significant Events During the Bankruptcy**

**1.     Bankruptcy Proceedings.**

(a)     On May 3, 2023, the Bankruptcy Court approved the employment of the law firm of Broege, Neumann, Fischer & Shaver, LLC as attorneys for the Debtor/Debtor-in-Possession;

(b)     On August 14, 2023, secured creditor Santander Bank, N.A. ("Santander Bank") filed a motion for relief from the automatic stay that is returnable September 26, 2023

(c)     On September 5, 2023, the Debtor opposed the motion of Santander Bank.

**2. Other Legal Proceedings.** *New Jersey Economic Development Authority v. CarpetCyle, LLC, et al; MER-L-000738-22.*

**3. Actual and Projected Recovery of Preferential or Fraudulent Transfers.** The Debtor does not contemplate initiating any actions to recover fraudulent conveyance and preferences.

**4. Current and Historical Financial Conditions.** The post-petition operations of the Debtor are as reflected on the Interim Financial Reports filed by the Debtor on a monthly basis with the Clerk of the United States Bankruptcy Court and the office of the United States Trustee for the District of New Jersey. The Interim Financial Reports are available for inspection and review at either the office of the Clerk of the United States Bankruptcy Court, 402 East State Street, Trenton, New

Jersey 08607 or the office of the United States Trustee for the District of New Jersey, 1 Newark

Center, Suite 2100, Newark, New Jersey 07102, as well as, the office of the attorneys for the

Debtor. The schedules filed by the Debtor, together with such proofs of claim filed by creditors of

the Debtor with the Clerk of the Bankruptcy Court, indicate the following as of the Petition Date:

| ASSETS | |
|---|---:|
| The Property (including 50% undivided interest of spouse) | 535,000.00 |
| Household goods and furnishings – one-half ownership | 2,000.00 |
| Miscellaneous Electronics | 700.00 |
| Clothing and Sports Equipment | 900.00 |
| Money in bank | 3,568.00 |
| 60% ownership interest in R&R Holdings, LLC | 420,000.00 |
| 47.73% ownership interest in Carpet Cycle, LLC | unknown |
| 2001 Sea Ray Z10 Sun Deck Bowrider | 7,500.00 |
| **Total assets** | $962,168.00 |
| LIABILITIES | |
| Secured Claims | |
|     Santander Bank secured by first mortgage on the Property | 210,053.03 |
|     NewRez secured by first mortgage on the Property | 113,692.19 |
|     BB&T (US Small Business Administration) (no proof of claim) | $51,180.31 |
| General Unsecured Claims | |
| BB&T (US Small Business Administration) (no proof of claim) | 1,341,094.41 |
| NJ Economic Development Authority (no proof of claim) | 66,000.00 |
| Total Unsecured Claims | 1,421,094.41 |
| **Total Liabilities** | 1,796,019.94 |
| EQUITY | |
| Ownership Interests | |

### III - SUMMARY OF THE PLAN

**A. What Creditors and Interest Holders Will Receive Under the Proposed Plan.** The Plan

classifies claims and interests in various classes. The Plan states whether each class of claims or

interests is impaired or unimpaired. The Plan provides the treatment each class will receive.

**B. Unclassified Claims.** Certain types of claims are not placed into voting classes. They are not

considered impaired and they do not vote on the Plan because they are automatically entitled to

specific treatment provided for them in the Bankruptcy Code. As such, the Proponent has not placed the following claims in a class:

1. **Administrative Expenses and Fees.**  Administrative expenses are claims for fees, costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Code Section 507(a)(1), including all professional compensation requests pursuant to Sections 330 and 331 of the Code. The Code requires that all administrative expenses including fees payable to the Bankruptcy Court and the Office of the United States Trustee which were incurred during the pendency of the case must be paid on the Effective Date of the Plan unless a particular claimant agrees to a different treatment. The following chart lists all of the Debtor's unpaid administrative fees and expenses ("Compensation"), an estimate of future professional fees and other administrative claims and fees and their treatment under the Plan:

| Name | Claim For | Treatment | Estimated Amount |
|------|-----------|-----------|------------------|
| Clerk's Office | Fees | Paid in full on Effective Date | To be supplied |
| Office of U.S. Trustee | Quarterly Fees | Paid in full on Effective Date | To be supplied |
| Broege, Neumann, Fischer & Shaver, LLC | Legal Fees (estimated and exclusive of pre-petition retainer payment of $10,000) | Paid in full on Effective Date (or at option of counsel, over time in deferred payments) | $10,000 |

**Bankruptcy Court Approval of Professional Compensation Required:** Pursuant to the Bankruptcy Code, the Bankruptcy Court must rule on all professional compensation and expenses listed in this chart before the compensation and expenses will be owed. The professional in question must file and serve a properly noticed fee application for

compensation and reimbursement of expenses and the Bankruptcy Court must rule on the application. Only the amount of compensation and reimbursement of expenses allowed by the Bankruptcy Court will be owed and required to be paid under this Plan as an administrative claim. Each professional person who asserts a further administrative claim that accrues before the confirmation date shall file with the Bankruptcy Court, and serve on all parties required to receive notice, an application for compensation and reimbursement of expenses no later than ninety (90) days after the Effective Date of the Plan. Failure to file such an application timely shall result in the professional person's claim being forever barred and discharged. Each and every other person asserting an administrative claim shall be entitled to file a motion for allowance of the asserted administrative claim within ninety days of the Effective Date of the Plan, or such administrative claim shall be deemed forever barred and discharged. No motion or application is required to fix the fees payable to the Clerk's Office or Office of the United States Trustee. Such fees are determined by statute. As indicated above, the Debtor will need to pay the administrative claims and fees on the Effective Date of the Plan unless a claimant has agreed to be paid later or the Bankruptcy Court has not yet ruled on the claim.

2. **Priority Tax Claims.** Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8). The Code requires that each holder of such a Section 507(a)(8) priority tax claim receive on account of such claim regular installment payments in cash—

(i) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim;

(ii) over a period ending not later than 5 years after the date of the order for relief under section 301, 302, or 303 of the Bankruptcy Code; and

(iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan (other than cash payments made to a class of creditors under section 1122 (b) of the Bankruptcy Code).

The following chart lists all of the Debtor' Section 507(a)(8) priority tax claims and their treatment under the Plan:

| DESCRIPTION | AMOUNT OWED | TREATMENT |
|---|---|---|
| Internal Revenue Service | $0.00 | N/A |
| State of New Jersey Division of Taxation | $0.00 | N/A |

## C. CLASSIFIED CLAIMS AND INTERESTS.

1. **Classes of Secured Claims.** Secured claims are claims secured by liens on property of the estate. The following represent all classes containing Debtor's secured pre-petition claims and their treatment under this Plan:

| CLASS # | DESCRIPTION | INSIDERS | IMPAIRED | TREATMENT |
|---|---|---|---|---|
| 1 | Secured Claim of Santander Bank, N.A. ("Santander Bank") secured by first mortgage on real property owned by Debtor commonly known as 198 Deer Haven Rd., Bedminster, New Jersey filed as Claim number 5-1 on the | No | Yes | The Debtor proposes to cure prepetition arrears by making 84 monthly payments on this claim in the amount of $2,033.06. This figure includes the monthly base mortgage payment as well as the cure portion at 7.74% interest pursuant to the Santander Bank proof of claim. The Debtor values collateral at $535,000. The |

13

| | | | | |
|---|---|---|---|---|
| | Claims Register of the Court in the amount of $210,053.03 | | | holder of the Claim in this Class shall retain its prepetition lien, and all rights of the holder of the Claim in this Class, to the extent not inconsistent with the Plan shall remain as set forth in the prepetition loan documents and as provided by applicable nonbankruptcy law. In the event of default the Debtor shall have a 30-day grace period to cure. If no cure is made the Debtor shall market and sell the Property within 9 months. |
| 2 | Secured Claim of NewRez LLC d/b/a Shellpoint Mortgage Servicing ("NewRez")[1] secured by second mortgage on real property owned by Debtor commonly known as 198 Deer Haven Rd., Bedminster, New Jersey filed as Claim number 6-1 on the Claims Register of the Court in the amount of $113,692.19 | No | Yes | The Debtor proposes to cure prepetition arrears by making 84 monthly payments on this claim in the amount of $1,578.38. This figure includes the monthly base mortgage payment as well as the prepetition arrearage as stated in the NewRez proof of claim of 3,788.85 which will be paid in a monthly cure payment of $52.67 at 4.5% per year interest . The Debtor values collateral at $535,000. The holder of the Claim in this Class shall retain its prepetition lien, and all rights of the holder of the Claim in this Class, to the extent not inconsistent with the Plan shall remain as set forth in the prepetition loan documents and as provided by applicable nonbankruptcy law. In the event of default the Debtor shall have a 30-day grace |

---

[1] This claim was initially filed by LoanCare and transferred from LoanCare to NewRez on or around September 6, 2023.

| | | | | period to cure. If no cure is made the Debtor shall market and sell the Property within 9 months. |
|---|---|---|---|---|
| 3 | Secured obligation to Branch Banking and Trust Company, as successor to Susquehanna Bank ("BB&T") secured by a third mortgage on real property owned by Debtor commonly known as 198 Deer Haven Rd., Bedminster, New Jersey | No | Yes | Neither BB&T nor the Small Business Administration has filed a proof of claim and the exact amount owed is unknown, but the Debtor knows the amount is greater than the value of the Debtor's Property, less the senior Claims of Santander and NewRez. The claim of this creditor is subject to the mortgage held by the SBA. This claim shall be bifurcated in to secured and unsecured pursuant to 11 U.S.C. § 506(a) and (d), its lien partially avoided, and the mortgage partially unsecured. The Debtor proposes to make 84 payments on the secured portion of this obligation at 4% annual interest in the amount of $51,180.31, which yields $609.29 each month. Upon payment in full of the $51,180.31, the mortgage securing the Secured Claim in this Class shall be cancelled and of no further force or effect. The Debtor is authorized to file a discharge of mortgage to discharge the mortgage of record. |

**2. Classes of Priority Non-Tax Claims.** Certain priority non-tax claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7) are entitled to priority treatment. These claims are to be treated as follows: the Debtor owes no priority non-tax claims.

3. **Classes of General Unsecured Claims.** General unsecured claims are unsecured claims not entitled to priority under Code Section 507(a). These claims are to be treated as follows:

| CLASS# | DESCRIPTION | IMPAIRED | TREATMENT |
|---|---|---|---|
| 4 | General unsecured claims in the amount of $1,421,094.41 | YES | The amount of Claims in this Class are estimated as no proof of claim has been filed by BB&T or the SBA. The Claims in this Class shall receive nothing. |

4. **Class(es) of Equity Interest Holders.** The members of this class will be treated as follows:

| CLASS# | DESCRIPTION | IMPAIRED | TREATMENT |
|---|---|---|---|
| 5 | Ownership interests | NO | This Class shall retain ownership of its equity interests in the property of the estate. |

D. <u>MEANS OF EFFECTUATING THE PLAN.</u>

1. **Funding for the Plan**. The Debtor shall fund the plan through his income derived from his ownership interest in Carpet Cycle, LLC, and if necessary, the sale of the Debtor's real property.

2. **Post-Confirmation Management**. The management of the Reorganized Debtor shall be the the Debtor.

3. **Disbursing Agent**. The Debtor's attorney shall act as the disbursing agent. The Disbursing Agent shall post no bond and shall receive compensation for distribution services rendered and expenses incurred pursuant to the Plan at its normal hourly rates.

**E. Other Provisions of the Plan.**

**1. Executory Contracts and Unexpired Leases.** The Plan provides that all Executory Contracts and Unexpired Leases, except for those specifically assumed by the Debtor in writing or previously assumed by Court Order, shall be deemed rejected. All proofs of claim with respect to claims arising from said rejection must be filed with the Bankruptcy Court within the earlier of (i) the date set forth for filing claims in any order of the Bankruptcy Court approving such rejection or (ii) thirty (30) days after the Confirmation Date. Any such claims, proofs of which are not filed timely, will be barred forever from assertion.

1. Assumptions. The following are the unexpired leases and executory contracts to be assumed as obligations of the reorganized Debtor under this Plan: None.

2. Rejections. On the Effective Date, all executory contracts not assumed shall be deemed to be rejected. The order confirming the Plan shall constitute an order approving the rejection of the lease or contract. If you are a party to a contract or lease to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

**THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF A LEASE OR CONTRACT IS UP TO AND INCLUDING SIXTY (60) DAYS FOLLOWING THE ENTRY OF THE CONFIRMATION ORDER.** Any claim based on the rejection of an executory contract or unexpired lease will be barred if the proof of claim is not timely filed unless the Court later orders otherwise.

17

**2. Changes in Rates Subject to Regulatory Commission Approval.** This Debtor is not subject to governmental regulatory commission approval of its rates.

**3. Retention of Jurisdiction.** The Court shall retain jurisdiction of this case pursuant to the provisions of Chapter 11 of the Bankruptcy Code, pending the final allowance or disallowance of all Claims affected by the Plan, and to make such orders as are necessary or appropriate to carry out the provisions of this Plan. In addition, the Court shall retain jurisdiction to implement the provisions of the Plan in the manner as provided under Section 1142, sub-paragraphs (a) and (b) of the Bankruptcy Code. If the Court abstains from exercising, or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter set forth in this Section, or if the Debtor or the reorganized debtor elect to bring an action or proceeding in any other forum, then this Section shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court, public authority or commission having competent jurisdiction over such matters.

**4. Procedures for Resolving Contested Claims.** The Debtor and/or the Disbursing Agent shall have 60 days subsequent to confirmation to object to the allowance of claims. The Proponent has reviewed the claims that have been filed. The Proponent reserves the right to object to the amount of the claims of Santander Bank and NewRez.

**5. Effective Date.** The Plan will become effective on the Effective Date which is the date 30 days after entry by the Bankruptcy Court of the order of confirmation**.**

**6. Modification.** The Plan Proponent may alter, amend or modify the Plan at any time prior to the Confirmation Date and thereafter as provided in Section 1127(b) of the Bankruptcy Code.

**F. Tax Consequences of Plan.** CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS. The following

disclosure of possible tax consequences is intended solely for the purpose of alerting readers to possible tax issues this Plan may present to the Debtor. The Proponent CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

       1.<u>Federal Income Tax Consequences to the Debtor</u>.  Since the Debtor does not intend to repay all creditors in full immediately, the difference between payment in full and the present value of the amount to be paid under the Plan will be treated as cancellation of indebtedness income under § 108 of the IRC.  The Debtor will not have to pay income taxes on account of such cancellation of indebtedness income but will be required to write down tax loss carry forwards or, at the election of the Debtor, the adjusted bases in depreciable assets.

      2. <u>Federal Income Tax Consequences to Holders of Allowed Claims</u>. Holders of Allowed Claims are likely to recognize a gain or loss equal to the amount realized under the Plan in respect of their Claims less their respective tax bases in their Claims.  The amount realized for this purpose will generally equal the sum of the cash, discounted to present value, received by holders under the Plan in respect of their Claims.  Any gain recognized by the holder of an Allowed Claim will generally be treated as capital gain, provided that the Claim represented a capital asset in such holders' hands.  The character of any gain or loss recognized will also depend on a number of other factors, including the tax status of the holder, whether the Claim was purchased at a discount, and whether and to what extent the Holder has previously claimed a bad debt deduction with respect to the Claim.  The capital gain will be considered long term with respect to Claims held for more than one year, and short term with respect to claims held for one year or less.  The holders' aggregate tax basis for any consideration received under the Plan will generally equal the amount

realized.  The holding period for any consideration received under the Plan will generally begin with the date following the receipt of such consideration.

Holders of Allowed Claims not previously required to have included in their gross income any accrued but unpaid interest on a Claim may be treated as receiving taxable interest income to the extent any consideration received under the Plan is allocable to such interest.  Holders previously required to include in their gross income any accrued but unpaid interest on a Claim may be entitled to recognize a deductible loss to the extent such interest is not satisfied under the Plan.  Holders of Allowed Claims constituting installment obligations for tax purposes may be required to recognize currently any gain remaining with respect to the obligations if pursuant to the Plan the obligation is considered to be satisfied at other than its face value, distributed, transmitted, sold or otherwise disposed of within the meaning of section 453(b) of the IRC.

A holder who under the Plan receives in respect of its Allowed Claim an amount less than the holders' tax basis in such Claim may be entitled in the year of receipt or in an earlier year to a bad debt deduction in some amount under Section 166 of the IRC or a worthless securities deduction under Section 165 (g) of the IRC.  A holder of an Allowed Claim may be entitled to a bad debt deduction with respect to such Claim only if (a) such holder is a corporation, or (b) such Claim constituted a debt either (i) created or acquired (as the case may be) in connection with a trade or business of such holders or (ii) debt the loss from the worthlessness of which is incurred in such Holder's trade or business.  A holder that has previously recognized a bad debt deduction with respect to its Claim, however, may be required to include in its gross income (as ordinary income) any amounts received under the Plan to the extent such amounts exceed the holders' adjusted basis in such Claim.

**G. Risk Factors.** The following discussion is intended to be a non-exclusive summary of certain risks attendant upon the consummation of the Plan. You are encouraged to supplement this summary with your own analysis and evaluation of the Plan and Disclosure Statement, in their entirety, and in consultation with your own advisors. Based on the analysis of the risks summarized below, the Plan Proponent believes that the Plan is viable and will meet all requirements of confirmation. The greatest risk is that the Property will not sell within one year of the Effective Date and will thereafter be sold at less than its fair market value at sheriff sale. In that event, there may be insufficient surplus funds remaining to pay unsecured creditors.

### IV - CONFIRMATION REQUIREMENTS AND PROCEDURES

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX. The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims. The proponent CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic. Many requirements must be met before the Bankruptcy Court can confirm a Plan. Some of the requirements include that the Plan must be proposed in good faith, that creditors or interest holders have accepted the Plan, that the Plan pays creditors at least as much as creditors would receive in a Chapter 7 reorganization, and that the Plan is feasible. These requirements are not the only requirements for confirmation.

**A. Who May Vote or Object**

**1. Who May Object to Confirmation of the Plan.** Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

**2. Who May Vote to Accept/Reject the Plan.** A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim that is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

   **a. What Is an Allowed Claim/Interest.** As noted above, a creditor or interest holder must first have an allowed claim or interest to have the right to vote. Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim. When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Bankruptcy Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes. **THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE WAS JUNE 20, 2023.** A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed. A claim is deemed allowed if (1) it is scheduled on the Debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim. An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest.

   **b. What Is an Impaired Claim/Interest**. As noted above, an allowed claim or interest only has the right to vote if it is in a class that is impaired under the Plan. A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class. For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of their claim plus interest. In this case, the Proponent believes that classes ONE, TWO, THREE, and FOUR are impaired and that holders of claims in each of these classes are

therefore entitled to vote to accept or reject the Plan. Parties who dispute the Proponent's characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Proponent has incorrectly characterized the class.

**3. Who Is Not Entitled to Vote.** The following four types of claims are not entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code Section 507(a)(1), (a)(2), and (a)(8)**;** and (4) claims in classes that do not receive or retain any value under the Plan. Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Code Section 507(a)(1), (a)(2), and (a)(7) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Code. Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan. EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

**4. Who Can Vote in More Than One Class.** A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

**5. Votes Necessary to Confirm the Plan.** If impaired classes exist, the Bankruptcy Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed later in Section (IV.A.8.).

**6. Votes Necessary for a Class to Accept the Plan.** A class of claims is considered to have accepted the Plan when more than one-half (½) in number and at least two-thirds (b) in dollar amount of the allowed claims that actually voted, voted in favor of the Plan. A class of interests is considered to have accepted the Plan when at least two-thirds (b) in amount of the allowed interest-holders of such class which actually voted, voted to accept the Plan.

**7. Treatment of Nonaccepting Classes.** As noted above, even if all impaired classes do not accept the proposed Plan, the Bankruptcy Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required by the Code. The process by which nonaccepting classes are forced to be bound by the terms of the Plan is commonly referred to as "cramdown". The Code allows the Plan to be "crammed down" on nonaccepting classes of claims or interests if it meets all consensual requirements except the voting requirements of Section 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. §1129(b) and applicable case law.

**8. Request for Confirmation Despite Nonacceptance by Impaired Class(es).** The party proposing this Plan asks the Bankruptcy Court to confirm this Plan by cramdown on impaired classes if any of these classes do not vote to accept the Plan.

**B. Reorganization Analysis.** Another confirmation requirement is the "Best Interest Test", which requires a reorganization analysis. Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the Debtor's assets are usually sold by a Chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien. Administrative claims are paid next. Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority. Unsecured creditors with the same priority share in proportion to the amount of their allowed claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

In order for the Court to be able to confirm this Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 reorganization. The Plan Proponent maintains that this requirement is met here for the following reasons: a Chapter 7 trustee would market and sell the Property, in which event the amounts to be paid to unsecured creditors would not differ from the amount they will be paid under the Plan. This too is similar to the Plan. The Debtor believes that the likely results of reorganization under Chapter 7 are as follows:

| ASSETS | |
|---|---:|
| The Property (including 50% undivided interest of spouse) | 535,000.00 |
| Household goods and furnishings – one-half ownership | 2,000.00 |
| Miscellaneous Electronics | 700.00 |
| Clothing and Sports Equipment | 900.00 |
| Money in bank | 3,568.00 |
| 60% ownership interest in R&R Holdings, LLC | 420,000.00 |
| 47.73% ownership interest in Carpet Cycle, LLC | unknown |
| 2001 Sea Ray Z10 Sun Deck Bowrider | 7,500.00 |
| Total assets | $962,168.00 |
| LIABILITIES | |
| Secured Claims | |
| Santander Bank secured by first mortgage on the Property | 210,053.03 |
| NewRez secured by first mortgage on the Property | 113,692.19 |
| BB&T (US Small Business Administration) (no proof of claim)[2] | $51,180.31 |

---

[2] This claim shall be bifurcated in to secured and unsecured pursuant to 11 U.S.C. § 506(a) and (d), its lien partially avoided, and the mortgage partially unsecured. This amount is

| General Unsecured Claims | |
|---|---:|
| BB&T (US Small Business Administration) (no proof of claim) | 1,341,094.41 |
| NJ Economic Development Authority (no proof of claim) | 66,000.00 |
| Total Unsecured Claims | 1,421,094.41 |
| Total Liabilities | 1,796,019.94 |
| EQUITY | |
| Ownership Interests | |
| AMOUNT TO BE PAID UNDER CHAPTER 7* | $0 |
| AMOUNT TO BE PAID PER PLAN | $0 |

*The Chapter 7 expenses of administration are estimated to be approximately 10% of the Debtor's total asset pool. This estimation is based upon the Chapter 7 trustee's right to his or her own administrative expenses in addition to expenses related to retention of an attorney, an appraiser, possibly an accountant, and a realtor to market and sell the real property.

**C. Feasibility.** A requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the reorganization or the need for further financial reorganization of the Debtor or any successor to the Debtor under the Plan, unless such reorganization or reorganization is proposed in the Plan. There are at least two important aspects of a feasibility analysis.

(1) The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses that are entitled to be paid on such date. The Plan Proponent maintains that this aspect of feasibility is satisfied as illustrated here:

| | |
|---|---:|
| Cash Debtor will have on hand by Effective Date | $15,000.00 |
| **To Pay:** Statutory costs & charges | 0.00 |
| **To Pay:** Expenses of Administration to Broege, Neumann, Fischer & Shaver, LLC (estimated) | $10,000.00 |
| **To Pay:** Plan Payments due on Effective Date - | $4,220.73 |

the difference between the value of the Debtor's real property and the aggregate liens against same held by Santander Bank and NewRez, less 10% to account for costs and fees associated with a hypothetical sale.

| Balance after paying these amounts | $779.27 |
| --- | --- |

The sources of the cash Debtor will have on hand by the Effective Date, as shown above, are to be made by the Debtor, Michael Sean Ragiel, from his personal income. If he is unable to make the payment to counsel on the Effective Date, Debtor's counsel will defer payment until funds are available.

(2) The second aspect considers whether the Proponent will have enough cash over the life of the Plan to make the required Plan payments. The Proponent believes that this second aspect of the feasibility requirement is met for the following reasons: the cash requirements of the Plan are met by the payments to be made from the sale of the Property.

## V - EFFECT OF CONFIRMATION OF PLAN

**A. Discharge.** The Plan provides that upon confirmation of the Plan, the Debtor shall not be discharged of liability for payment of debts incurred before confirmation of the Plan, to the extent specified in 11 U.S.C. §1141. Because the Debtor is an individual and not a corporation or other form of entity, the Debtor will not be entitled to a discharge until all payments to creditors under the Plan have been made. The provisions of the Plan shall be binding upon Debtor, all Creditors and all Equity Interest Holders, regardless of whether such Claims or Equity Interest holders are impaired or whether such parties accept the Plan, upon Confirmation thereof.

**B. Revesting of Property in the Debtor.** Except as provided in the Plan, the confirmation of the Plan revests all of the property of the estate in the Debtor.

**C. Modification of Plan.** The Proponent may modify the Plan at any time before confirmation. However, the Bankruptcy Court may require a new disclosure statement and/or revoting on the Plan if Proponent modifies the plan before confirmation. The Proponent may also seek to modify

the Plan at any time after confirmation so long as (1) the Plan has not been substantially consummated and (2) the Bankruptcy Court authorizes the proposed modification after notice and a hearing. Proponent further reserves the right to modify the treatment of any Allowed Claims at any time after the Effective Date of the Plan upon the consent of the Creditor whose Allowed Claim treatment is being modified, so long as no other Creditors are materially adversely affected.

**D. Post-Confirmation Conversion/Dismissal.** A creditor or party in interest may bring a motion to convert or dismiss the case under Section 1112 (b), after the Plan is confirmed, if there is a default in performance of the Plan or if cause exists under Section 1112(b). Quarterly fees pursuant to 28 U.S.C. § 1930(a)(6) continue to be payable to the Office of the United States Trustee post-confirmation until such time as the case is converted, dismissed, or closed pursuant to a final decree.